## George Shaunce *v.* John McCrystal, Appellant.

*Sale—Notice of withdrawal from business.*

Where a person sells his business to another who continues the business at the same stand and with the same employees, it is the duty of such persons to give actual notice to all persons who have had previous dealings with him. In the absence of such notice he will be liable for goods bought on his credit, and delivered to his successor.

*Partnership—Participation in profits.*

In an action to recover the price of goods sold and delivered to a person alleged to be a partner of the defendant, the purchaser testified: "Defendant was to own everything, put everything there required; we were to sell it and divide the profits." *Held*, that the evidence was sufficient to justify the court in saying to the jury that, if they believed it, a partnership existed between the parties.

Argued April 6, 1894.   Appeal, No. 353, Jan. T., 1894, by defendant, from judgment of C. P. No. 4, Phila Co., June T., 1893, No 241, on verdict for plaintiff.   Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and FELL, JJ.   Affirmed.

Assumpsit for goods sold and delivered.

At the trial, before THAYER, P. J., it appeared that plaintiff claimed to recover for feed and hay delivered at a livery stable between Nov. 6, 1891, and April 29, 1892. Defendant claimed that at the time the goods were sold and delivered he had no interest in the stable, having previously sold out to one Joseph H. Gore. Plaintiff's evidence was in effect that he had sold and delivered goods prior to Nov. 6, 1891, to the latter's foreman, and that after that date he continued to sell and deliver

goods to the stable without any knowledge of a change in ownership.

Plaintiff also introduced evidence tending to show that defendant maintained his interest in the business all through the time during which the goods were being furnished, and that he continued to exercise acts of control over the business.

Plaintiff claimed that defendant and Gore were partners. On this subject Gore testified as follows :

" Q. Did Mr. McCrystal keep horses there at that time ? A. Yes, sir. Q. Did he have them there simply for the sake of keeping them, some of them ? A. He had them there to sell and hire out. Q. What was the agreement between you ? A. There was no agreement whatever, only we were to divide the profits. If there were any profits we were to divide them. Mr. McCrystal was to furnish everything, furnish the horses, wagons, harness, feed and everything ; he was to put everything there. If there were any profits we were to divide them. Q. When did you leave the place ? A. I think I left on the 27th of last April. About a year ago. . . . By the Court. Q. Your arrangement was that you were to own the place jointly and carry it on in their account ? A. No, sir ; I was not to own it at all. Mr. McCrystal was to own everything, put everything there required, we were to sell it and divide the profits. Q. You were a partner of his ? A. In one way ; yes, sir. You can look at it in that way. Q. Did you tell any of your boarders that Mr. McCrystal and you were partners there ? A. No, sir ; I didn't. I didn't consider we were partners."

The charge of the court was as follows :

" [The plaintiff was in the feed business. He sold hay and straw and oats and so on for horses, and the defendant, Mr. McCrystal, was the keeper of a livery stable, and he had sent a man named Stoever to buy feed of Mr. Shaunce, and Mr. McCrystal paid the bill.] [1] Afterwards another man, Mr. Gore, came there and bought feed for the same livery stable, and Mr. Shaunce, supposing the same people were in business there whom he had given credit to before, continued, after Gore came there, to supply the feed for the livery stable. This action is brought against McCrystal for the price of that feed. [Of course, if, as Mr. Gore says, he was in partnership with

Mr. McCrystal, Mr. McCrystal is responsible for the bill, even though Gore is not sued with him in this suit. You ought to find a verdict for the plaintiff if you believe Gore when he says he was in partnership, carrying on this business with Mr. McCrystal. McCrystal denies it, and says he was not in partnership with him, and Gore says he was not only in partnership in the general business there, but in the carrying on of a kind of a horse trade, that is, he divided the profits on the horses that were sold there.] [2] I suppose, if the horses were kept there, whether Mr. McCrystal was in partnership or not with Gore, those horses would have to be fed by somebody, and they seem to have been fed with the plaintiff's grain."

" [If you find that he was a partner, there is an end of this case, and he is responsible for the bill, and you will find a verdict for the plaintiff.] [3] [If you find that he was not a partner, that he had sold out in good faith, then it was his duty, as the goods were sold for the same business at the old stand, to have notified Mr. Shaunce of the change that had been made in the proprietorship of the place. There is no doubt about that. Mr. McCrystal did take the precaution to inform the landlord, but he seems to have forgotten to inform the other people. If it was his duty, in carrying on this business there and sending out orders by the stablemen for feed, etc., to have acquainted Mr. Shaunce, who had been furnishing these supplies and honoring those orders by sending his feed down there, with the change that had been made, that he had gone out and Gore had come in, and Gore alone was responsible, in the absence of any such notice on his part he would be responsible for this bill.] " [4]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1–4) instructions, quoting them.

*A. E. Stockwell,* for appellant, cited: Gibbs's Est., 157 Pa. 59 ; Martin v. Kaffroth, 16 S. & R. 120 ; Wolle v. Brown, 4 Whart. 365 ; Porter v. Wilson, 13 Pa. 641 ; Lenhart v. Allen, 32 Pa. 312 ; Edwards v. Tracy, 62 Pa. 374 ; Johnston v. Warden, 3 Watts, 101 ; Barker v. Dinsmore, 72 Pa. 427 ; Stephenson v. Grim, 100 Pa. 70 ; Dean v. Yates, 22 Ohio, 388 ; McCrillis v. Allen, 57 Vt. 504 ; Edmunds v. Transportation

Co., 135 Mass. 283 ; Ice Co. v. Potter, 123 Mass. 28 ; Caughey's Case, 1 Ch. Div. 521 ; Schmaling v. Thomlinson, 6 Taunt. *147.

*Leonard, Bannard & Reath*, for appellee, not heard, cited, As to duty to give notice of withdrawal of partner: Farrar v. Babb, 4 Pa. C. C. R. 407; Saguier v. Watson, 15 W. N. 455 ; Clark v. Fletcher, 96 Pa. 416.

As to right to take advantage of nonjoinder of partner: Wine Co. v. Wilson, 1 W. N. 5 ; Delp v. Hadley, 12 W. N. 323 ; Markley v. Quay, 8 W. N. 145 ; Reiter v. Fruh, 150 Pa. 626.

PER CURIAM, July 11, 1894:

An examination of this record has failed to convince us that there is any substantial error therein. Neither of the specifications of error requires special notice.

Judgment affirmed.