# Roebling's Sons Company *v.* American Amusement & Construction Company, Appellant.

*Practice, C. P.—Trial—Continuance—Amendment—Discretion of court.*

1. The propriety of continuing a case after the allowance of an amendment of the statement, when the defendant has pleaded surprise, is a matter within the discretion of the trial judge which is not reviewable in the appellate court, except where abuse of discretion is shown.

*Evidence—Letter—Invoice—Set-off.*

2. In an action to recover the price of machinery where it is not denied that the machinery was furnished, and the defense is in the nature of a set-off, it is not error for the trial judge to admit in evidence an invoice containing an itemized statement of the amount claimed, where such invoice is referred to in a letter previously admitted without objection and forming the basis of the action.

3. In such a case where the letter stated that the plaintiffs proposed to furnish certain machinery, as shown by blue prints, it is not error to refuse to permit the defendant to show that no blue prints were received or seen by the defendant prior to the date of the acceptance of plaintiffs' proposition. It was the duty of the defendant if he did not receive the blue prints to so notify plaintiff and wait until he did receive them before accepting the offer.

4. The court in such a case commits no error in excluding evidence bearing upon the measure of damages to be allowed the defendant in case the set-off is established, where the verdict of the jury shows that plaintiff's whole claim was allowed, and that there was in consequence no breach of the contract.

*Contract—Sale—Warranty—Implied warranty—Special purpose.*

5. The principle of an implied warranty is not applicable to an order specifying articles of a given weight, size and material, to be manufactured according to specified plans; and this is the case although the articles are intended to be marshaled as machinery.

*Practice, C. P.—Evidence—Objection—Appeals.*

6. A party complaining on appeal of admission of evidence in the court below will be confined to the specific objection there made to it.

Argued Jan. 19, 1911.    Appeal, No. 344, Jan. T., 1910, by defendant, from judgment of C. P. No. 2, Phila. Co.,

Dec. T., 1904, No. 4,153, on verdict for plaintiff in case of John A. Roebling's Sons Company of New York v. American Amusement & Construction Company. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit for goods sold and delivered. Before WILT-BANK, J.

The facts are stated in the opinion of the Supreme Court.

At the trial plaintiff made the following offer:

Mr. Rawle: I want to offer in evidence a letter from plaintiff to defendant, dated April 17. I have called for the original.

Mr. Brown: Before that offer is passed upon I will call upon counsel for plaintiff to state whether or not he is suing upon this letter or upon the parol contract.

Mr. Rawle: I am suing on this letter.

Mr. Brown: I object because it is not so set forth in the statement of claim.

Counsel for plaintiff moves for leave to amend the statement of claim. Motion allowed.

Counsel for defendant moves for a continuance on the ground of surprise.

Motion overruled. Exception noted for defendant. [1]

Counsel for plaintiff offers in evidence the letter.

Objected to, it not having been declared upon, and counsel for plaintiff having stated this contract upon which suit is brought is not set forth in the statement of claim.

Objection overruled. Exception noted for defendant. [2]

The letter read as follows:

April 17th, 1903.

"American Amusement & Construction Company,

"Thomas J. Ryan, President,

"No. 406 GIRARD TRUST BUILDING, PHILA., PA.

"Proposition on Machinery, &c.

"Dear Sir:

"We herewith revise our letter of the 16th inst. to make

things a little bit clearer, in connection with our proposition to furnish machinery for your coal mine at Willow Grove Park.

"We propose to furnish winding machinery complete as shown on our B-P, including tension carriage and additional length of shafting to receive the driving pulleys, but do not include the pulleys, on which we will make you prices later. We also include 2-36 inch guide wheels for the ends of incline with their shafts and bearings complete and 20-4 x 4 wide mouth track rollers complete with shafts and bearings, including 2 extra guide wheels, 12 inches diameter, with shafts and bearings, for tension carriage, in case you need same to lead counter weight from tension carriage, in preference to making hole in the ground. This makes the winding machinery complete, less the pulleys and motors, for the sum of $939.00.

"We propose to furnish you 8 grip cars with grip and 2 shoe brakes, all lever connection for operating grip and brakes, all complete, less body for $175.00 each. 16 trailers all complete at $85.00 each. The trailers and grip cars are each fitted with 2 steel pointed dogs, to prevent same from running down the incline backwards.

"We will also supply you ¾ inch diameter 19 wires to the strand, plough steel wire rope at 20c. per ft. less a discount of 45 & 2½ per cent. 1¼ inch x ¼ inch iron for track at 3.6c. per ft. of iron, cut at angles on the end and drilled every 9 inches for screws.

"We do not know the exact length of rope required or the amount of iron for track, but assuming 500 ft. of rope and 4000 ft. of iron, the total cost of plant to you would be about $3,913.00.

"25 per cent. of this amount to be paid on signing of contract would amount to about $980.00-50 per cent. to be paid when goods are delivered and the balance when plant is put in operation.

"This total sum price is approximate, owing to the fact that we do not know the length of track iron or rope required.

"If the above terms are satisfactory to you, we will proceed to ship material at the earliest possible date.

"Yours very truly,

"John A. Roebling's Sons Co. of N. Y.

Mr. Rawle: "Q. State whether or not that is the invoice referred to in this letter of July 25th, 1903. [Paper shown witness.] A. That is the invoice referred to."

Counsel for plaintiff offers the invoice in evidence.

Objected to. Objection overruled. Exception noted for defendant. [3]

The invoice read as follows:

"To Winding Machinery as agreed..... $939.00

8 Automatic Grip Cars at $175.00 each........................ 1,400.00

16 Trailer Cars at $85.00 each...... 1,360.00

3800 ft. $1\frac{1}{4}''$ x $\frac{1}{4}''$ Iron Track at 3-6 10c. foot..................... 136.80

830 lbs. $1\frac{1}{4}''$ x $\frac{1}{4}''$ Iron Track Bent at $5^3/_8$c. lb.................... 47.73

2—$4^3/_8''$ dia. shafts............... ....

1—27-16'' dia. shafts............... ....

2—Collars...................... 45.03

2—48'' Spur Gears ............... ....

1—12'' Pinion Gear. ............. 88.50

3 Pairs Wedges for Automatic Grip. . 19.50

1—30'' sheave with shafts & bearings, no charge

900 ft. No. 10 Plough Steel Rope (2 pcs. 450 ea.) $\frac{3}{4}''$ dia. at 26c. 234.00

45 & $2\frac{1}{2}\%$            108.52

————$125.48

3 Trips Engineer to Willow Grove, Pa. Time & Expenses, no charge

                                $4,162.04

on ac.                          980.00

                                ————

                                $3,182.04"

Mr. Archbald: I propose to show that no blue prints of any kind showing the machinery in question were received or seen by the defendant company prior to the date of the acceptance of the plaintiff's proposition.

Mr. Rawle: I object that a party accepting an offer to furnish machinery according to blue print, cannot be heard to say at this date that he never saw the blue print.

The Court: Your point is that he ought to have given notice whereas blue prints are mentioned in the letter, that he had not received them, and to wait before he accepted the offer.

Objection sustained. Exception noted for defendant. [4]

Mr. Archbald: I offer to show by the witness on the stand that the track furnished by the plaintiff company was so light and the trucks for the cars furnished by the plaintiff company were so heavy, that when the trucks were put in operation on the tracks the pounding of the tracks by the trucks, particularly on the curves, threw the gauge of the track out of adjustment, so that labor and money had to be expended in readjusting the gauge until such time as they could procure and lay T rails of a different form on those curves; also to show by the witness the expense of doing the labor of readjusting, also the expense of replacing this track with T rails.

Mr. Rawle: Objected to upon the ground that we did not furnish the car bodies but only the trucks, and that the weight of the structure, which is called a car, consisting of car bodies and trucks, is that which pounded, and not the trucks alone; also that the contract calls for a specific dimension of strap iron and that was furnished, and a specific truck construction, and that was furnished.

Objection sustained. Exception noted for defendant. [10]

Mr. Rawle: "Q. Assume an inclined plane in the Willow Grove Park where you now testify you once rode on the device. Take the grade of the incline and what you saw it to be. Assume cars and trucks considerably heavier than those you rode upon, and you may assume that they weighed 800 pounds apiece. Assume that there

were three of such, and only three, and each one carried four passengers of average weight, and only four. Assume also that there was never a load on this lifting machinery of more than one train consisting of three cars with their load, at any one time. Consider also the blue print before you, showing the hoisting mechanism, and then state whether or not, in view of these facts, the friction drive method shown on that blue print is a proper mechanical device and suitable for doing the work of that inclined plane, as I have stated it in my question, and a recognized method in mechanical engineering."

Objected to on the ground that the contract provides for grip cars and trailers. Objection overruled. Exception noted for defendants. [12]

"A. I will have to make some calculations. We had three cars weighing 2,400 pounds. The device shown on the blue print would be perfectly capable, if properly adjusted, to transport sufficient power to hoist the assumed load up the incline."

Verdict and judgment for plaintiff for $4,496.44. Defendant appealed.

*Errors assigned* were (1–12) various rulings on evidence, quoting the bill of exceptions.

*R. W. Archbald,* of *Ehrlich & Archbald,* and *Francis Shunk Brown,* of *Simpson & Brown,* for appellant.—The refusal of a continuance after allowing a material amendment in the contract on which plaintiff claimed, was error: Rowland v. Philadelphia, 202 Pa. 50; Minnich v. Lancaster & Lititz Elec. Ry. Co., 203 Pa. 632; Goodman v. Coal Township, 206 Pa. 621; Sturzebecker v. Inland Traction Co., 211 Pa. 156.

*Francis Rawle,* with him *Guilliaem Aertsen, Jr.,* for appellee.—As mistakes made in the use of a judge's discretion cannot be assigned for error, they cannot be reached and corrected, unless an abuse of this power be

alleged: Schrimpton v. Bertolet, 155 Pa. 638; Smith v. Times Pub. Co., 178 Pa. 481.

OPINION BY MR. JUSTICE POTTER, April 10, 1911:

It appears from the evidence in this case that on April 17, 1903, Roebling's Sons Company sent to the American Amusement & Construction Company, a letter containing an offer to furnish certain machinery needed, which was specified in detail, for the total price of $3,913. The letter referred to blue prints (B. P.) which had previously been submitted to representatives of the defendant company. On April 21, 1903, Thomas J. Ryan, president of the amusement company, wrote a letter to Roebling's Sons Company, accepting the proposition to furnish the machinery, and inclosing check for the amount of the initial payment required. The machinery was completed and delivered by May 29, 1903, and subsequently a bill was rendered, which showed a balance of $3,182.04 due Roebling's Sons Company. Payment was refused by the defendant company, upon the ground that the machinery was not properly made, and could not be operated without alterations which caused expense and delay. Upon the trial counsel for plaintiff offered in evidence the letter above referred to, containing the proposition to furnish the machinery, which letter had been produced by defendant on call. In response to an inquiry from the other side, plaintiff's counsel stated that he was suing on the letter; that is, upon the contract set forth in the letter. Objection was then made to the offer because it was not set forth in the statement of claim. On motion, counsel for plaintiff were then permitted to amend the statement. A motion by defendant then followed, for a continuance on the ground of surprise, which was overruled. To this action of the trial court, counsel for defendant excepted, and have made it the basis of the first and second assignments of error. The propriety of continuing the case after the allowance of an amendment, when the defendant has pleaded surprise, is a matter

within the discretion of the trial judge. This principle was laid down in Folker v. Satterlee, 2 Rawle, 213, and was reaffirmed with some elaboration by Mr. Justice SARGEANT in Tassey v. Church, 4 W. & S. 141, 143, where he said, "This question arises under the provisions of the sixth section of the Act of March 21, 1806 (4 Sm. Laws, 326), by which, if by the alteration or amendment the adverse party is taken by surprise, the trial is to be postponed to the next court. The defendant contends that whenever an amendment of the declaration is made immediately before or during the trial, he has a right to a continuance as a matter of course. The act of assembly does not seem to us capable of this construction. It puts it not on the allegation of surprise, but on the existence of the fact, which necessarily throws upon the court the duty of ascertaining and determining whether the party is really surprised, or there is merely an affectation of being so without real foundation. For many cases may be supposed in which the alteration would be so trivial, or it could be so obvious, that no surprise could exist, that it would be unjust to allow a continuance. Of this, however, the court below is the sole judge: being matter of sound discretion, and turning frequently on matters of fact not appearing in the record, the question whether or not a party was surprised by allowing an amendment, is not of a nature to be examinable on a writ of error, but the judgment of the court must, as in numerous other instances, be final and conclusive." The same principle was again stated in Farmers' & Mechanics' Ins. Co. v. Simmons, 30 Pa. 299, 302, where Mr. Justice STRONG said: "If the amendment was properly allowed then the refusal to permit a continuance of the cause was a thing discretionary with the court, and the exercise of that discretion cannot be reviewed by us." And again in Walthour v. Spangler, 31 Pa. 523, it was held, as set forth in the syllabus, "The allowance or refusal of a continuance, in case of an amendment, is a matter of discretion in the court below, which is not reviewable in this court."

In the present case we see no reason to fairly question the discretion which was exercised by the trial judge, in refusing to continue the case; and as to the admission of the letter in evidence, if the amendment to the statement was proper, the letter which was the subject of the amendment, was necessarily admissible.

In the third assignment of error, complaint is made of the admission in evidence, against objection, of an invoice or itemized statement of the amount claimed by plaintiff. It appears from the record that a letter written by plaintiff to defendant, stating the amount of the invoice, was offered in evidence, and was admitted without objection. Counsel for plaintiff then offered the invoice referred to in the letter, and it was admitted against objection. We see nothing wrong in this, for the invoice was merely an itemized statement of the amount claimed. If the letter was admissible, the invoice was equally so, for it was merely an amplification of a part of the letter. We do not see that its admission could have done defendant any harm. The fact that the machinery had been furnished was not denied, nor was it claimed that the prices charged were not in accordance with the contract. The defense was in the nature of a set-off, and could not be affected by the use of this invoice as evidence.

In the fourth assignment of error, complaint is made of the exclusion of the offer of defendant's counsel, to show that no blue prints, showing the machinery in question, were received or seen by defendant prior to the date of the acceptance of plaintiff's proposition. The letter containing that proposition stated, "We propose to furnish winding machinery complete, as shown by our B. P. (blue prints)." The trial judge excluded the offer, for the declared reason that, under the wording of the proposition, if defendant had not received the blue prints, it should have notified the plaintiff of that fact, and have waited until it did receive them before accepting the offer. He held that if defendant saw fit to accept the proposition without waiting to receive the blue prints, it was bound

by its acceptance, and it was therefore immaterial whether it had actually received the blue prints at the time or not. We see no reason to differ with the view expressed by the trial judge in this respect.

The fifth, sixth, seventh, eighth, ninth and eleventh assignments of error all relate to the exclusion of evidence bearing upon the measure of damages to be allowed to defendant, in case it succeeded in satisfying the jury that the plaintiff had not fulfilled the terms of the contract. But it is apparent from the verdict that the jury found that there was no breach of the contract, for it awarded to plaintiff its entire claim. Under this finding, no damages could have accrued to defendant, and the action of the court with respect to evidence as to the measure of damages, became immaterial.

In the tenth assignment of error it is alleged that the trial judge erred in excluding an offer made by defendant's counsel to show that the track furnished by plaintiff was inadequate to sustain the burden put upon it, and that by reason of that fact the defendant was obliged to lay additional rails and readjust the track. It does not appear, however, that there was any offer to show any departure in the weight or size of the parts in question, from the specifications set forth in the contract. There was evidence tending to show that the material furnished conformed in these particulars to the contract, and to the order given by defendant company. There was no express warranty as to the working of the machinery, and as the order specified articles of a given weight, size and material, to be manufactured according to specified plans, there would be no implied warranty. The principle of an implied warranty is not to be applied where a special thing is ordered, although this be intended for a special purpose: Port Carbon Iron Co. v. Groves, 68 Pa. 149; American Home Savings Bank Co. v. Trust Co., 210 Pa. 320.

In the twelfth assignment of error, complaint is made of the overruling of the objection of defendant's counsel to a hypothetical question put to a witness called by

plaintiff in rebuttal. The testimony shows that the objection was made on the specific ground that "the contract provides for grip cars and trailers." Counsel for appellant now urge that the question assumed facts not in evidence, and that it was therefore error to overrule the objection. But that is not the ground upon which the objection was put when it was made. In Mills v. Buchanan, 14 Pa. 59, where the prior decisions were reviewed, it was held, as set forth in the syllabus, that "a party objecting to evidence, is to be confined to the ground of objection taken in the court below." And in the later case of Danley v. Danley, 179 Pa. 170, it was declared to be a settled principle that the party complaining on appeal of admission of evidence in the court below, will be confined to the specific objection there made to it. This rule was again approved in the recent case of Benner v. Fire Association, 229 Pa. 75. The trial judge submitted to the jury the question whether the alleged unsatisfactory operation of the plant was due to the improper manner in which the machinery was set up and run, or whether it was due "to a radical or essential insufficiency" in the machinery itself. The verdict of the jury settled this contention in favor of the plaintiff.

The assignments of error are all overruled, and the judgment is affirmed.