## NORWOOD v. GREAT AMERICAN INDEMNITY CO.

Civil Action No. 2698.

District Court, E. D. Pennsylvania.

Sept. 2, 1943.

D. Alexander Wieland and Joseph J. Brown, both of Philadelphia, Pa., for plaintiff.

Axelroth & Porteous, of Philadelphia, Pa., for defendant Great American Indemnity Co.

KALODNER, District Judge.

The plaintiff has brought two separate suits, one against Great American Indemnity Company, the defendant herein, and the other against the Prudential Insurance Company of America (the defendant in Cause No. 2699). By agreement both cases were tried together and resulted in separate verdicts in favor of the plaintiff against each defendant. Both defendants have filed motions to set aside the verdicts and judgments entered thereon and for the entry of judgment upon their motions for directed verdicts made at trial. The defendants also moved for a new trial.

The suit in each case was by the beneficiary of a life insurance policy for the recovery under the "double indemnity" pro-

visions of the respective policies. The pertinent provision of the Great American Indemnity Company policy reads as follows: "Against loss resulting directly and independently of all other causes from bodily injuries * * * effected solely through accidental means."

The policy of the Prudential Insurance Company of America provided: "The amount of accidental death benefit * * * shall be payable * * * immediately upon receipt of due proof that the death of the assured occurred * * * as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means, of which * * * there is a visible contusion or wound on the exterior of the body * * * provided however that no accidental death benefit shall be payable if the death of the insured resulted * * * directly or indirectly from bodily or mental infirmity or disease in any form."

It is the plaintiff's contention that the death of the insured resulted solely from an injury sustained in an accident—a fall in a bathtub.

The defendants maintain that they are not liable under the aforementioned provisions of the policy and that the death of the insured was caused wholly or partly by disease, physical impairment, and other conditions of ill health, affecting particularly the decedent's heart, blood vessels and other organs and parts of his body.

The jury by its verdict rejected the contentions of the defendants after a rather lengthy deliberation. The issue was adequately presented to the jury. The Court in its charge instructed the jury that it was incumbent upon the plaintiff to show by a fair preponderance of the evidence that the death of her husband was caused solely by external and accidental means and further that the death was not caused by or contributed to, directly or indirectly, wholly or partly, by bodily infirmity or disease.

The Court further charged that if the evidence pointed to a pre-existing infirmity or disease which may have been a contributing factor, the burden was upon the plaintiff to exclude the possibility that such pre-existing infirmity or disease contributed to cause the insured's death. The Court's instructions were in accordance with the principles enunciated by the Supreme Court of Pennsylvania in a number of recent cases. See: Watkins v. Prudential Insurance Co., 315 Pa. 497, 512, 173 A. 644, 95 A.L.R. 869; Lucas v. Metropolitan Life Insurance Co., 339 Pa. 277, 14 A.2d 85, 131 A.L.R. 235; Real Estate Savings & Trust Co. v. Metropolitan Life Insurance Co., 340 Pa. 533, 17 A.2d 416; and O'Neill et al. v. Metropolitan Life Insurance Co., 345 Pa. 232, 26 A.2d 898, 142 A.L.R. 735.

The case took six days to try. There were some 650 pages of testimony and exhibits. As already stated, on the one hand the plaintiff contended that the insured's death was due solely to accidental causes, while the defendants contended that the insured's death was due to a chronic diseased condition, thus presenting a single fact issue. The jury chose to credit the plaintiff's side and accordingly found for the plaintiff. I am satisfied that the case was fairly and impartially tried and that the verdict of the jury was not against the weight of the evidence or against the law.

The defendants specifically complain of certain errors as follows:

(1) On the question of res gestae. The plaintiff, the wife of the insured, was permitted to testify, over the objection of the defendants, of the conversation she had with her husband (a Naval surgeon), shortly after the accident. She testified that on January 12, 1942, when they were in their room in the hotel, the husband, about 9:30 P.M. retired to the bathroom to take a tub shower, when she heard a "terrific crash". She went to the bathroom, opened the door and saw her husband in a half-sitting position trying to get out of the bathtub. She asked what had happened and he made some amusing remark that "he was trying to end his life on a piece of soap" and he handed her the piece of soap. He came out of the bathroom about four or five minutes later dressed in his pajamas, sat down and smoked a cigarette and rubbed the back of his head. She asked him if he had hurt himself and he replied that "he had given himself an awful whack on the back of his head in a very vital spot." In a few minutes they went to bed but the husband did not fall asleep. In about twenty minutes or half hour she asked him why he was not sleeping and he said "he didn't feel very well, and he couldn't go to sleep." She turned on the light and he repeated again that "he had given himself an awful whack on the back

834

of the head in a very vital spot." At that point he became quite pale and said he would smoke a cigarette. He propped himself up with a pillow and smoked a cigarette and chatted with the plaintiff, and as he was putting his cigarette out in the ash tray he said "I feel impending disaster. My heart seems to be missing a beat." She urged him to let her call a doctor, but he refused and told her to go to sleep. As he was pulling the bed clothes up over himself he turned and gasped and was dead before she could step from her bed to his. She fixes the time of his death at about 11 P.M. I believe that under the circumstances of this case the testimony was properly admitted. It has been well stated in Commonwealth v. Gardner, 282 Pa. 458, 128 A. 87, 90:

"No fixed time or distance from the main occurrence can be set up as a rule to determine what utterances shall be admitted. Each case must depend on its own circumstances. * * *

"There must be some discretion lodged in the trial court in deciding whether such evidence is receivable as part of the res gestae. In determining the admissibility of such unsworn utterances, to a great extent a matter of first impression, considering all phases, much latitude should be given to the discretion of the court below. The fundamental thought should be, Did the declarant exercise her reflective faculties in her own interest in making the statement? If she did, or if there were grounds for the suspicion of it, the court ought not to admit the evidence."

(2) On the admissibility of plaintiff's documentary evidence. Plaintiff offered in evidence the records of the Brooklyn Naval Hospital. Objection was made thereto as follows:

By Mr. Axelroth n.t. 112: "I object to it your Honor. If a hospital record is to be offered in evidence, first of all it isn't admissible under any consideration, but we don't object to the admission of the entire hospital record." Whereupon the entire record was offered. This should be complete answer to the present objection.

▮▮▮ Plaintiff also offered the service record of the insured of the Navy Department, Bureau of Personnel. Defendants objected to this *on account of relevancy.* Defendants now raise the point that there was no compliance with the *formalities* required by this Act of Congress, 28 U.S.C.A.

§ 661 for admissibility, to wit, that they were not shown to be documents originating in any Executive Department of the United States, nor were the papers in question authenticated under the seals of such Departments. Defendants having at the trial objected specifically on account of relevancy cannot now raise another ground. "A specific objection *overruled* will be effective to the extent of the grounds specified, and no further. An objection overruled, naming a ground which is untenable, cannot be availed of because there was *another and tenable ground which might have been named* but was not." Wigmore on Evidence, Vol. 1, Sec. 18, p. 185 (emphasis in text). Morgan v. Gamble, 230 Pa. 165, 79 A. 410; Roebling's Sons Co. v. American Amusement & Construction Co., 231 Pa. 261, 80 A. 647; Danley v. Danley, 179 Pa. 170, 36 A. 225; Mills v. Buchanan, 14 Pa. 59.

(3) Defendants' further contend that plaintiff's evidence as to the cause of death was contradictory and that she therefore failed to sustain the burden of proof. Defendants elicited in the cross-examination of the plaintiff that a death certificate was issued by the United States Naval Hospital which stated the principal cause of death to be "hypertensive heart disease". Plaintiff then offered in evidence the records of the Naval Hospital containing the autopsy reports (Exh. P–1, P–2, P–2a, P–2b, P–2c, P–2d) and also the certificates of death in various stages of preparation (Exh. P–4, P–5, P–6), Exhibit P–6 is a carbon copy of the certificate of death in its final form, which stated the principal cause of death to be "hypertensive heart disease." (The defendants as part of their case likewise offered a certified copy of the death certificates, Exh. Pru–2 and AM–2 which are identical to Exh. P–6.) The plaintiff also offered in evidence the decedent's medical and physical records of the Navy.

▮▮▮ It is now defendants' contention that because plaintiff had offered in evidence the death certificate (Exh. P–6) which gave the cause of death as hypertensive heart disease, and plaintiff's expert (Dr. Klein) testified that the sole cause of death was a blow on the head, her (the plaintiff's) own testimony was contradictory and that inasmuch as the burden was on the plaintiff, she failed to maintain that burden, citing Mudano v. Philadelphia R. T. Co., 289 Pa. 51, 59, 137 A. 104. In the Mudano case the plaintiff's own ex-

perts disagreed as to the cause of death and the Court properly held that the testimony was so contradictory and conflicting as to present to the jury no basis for a finding except a mere guess. In the case at bar the defendants first elicited on cross examination the fact that a death certificate was issued giving as the principal cause of death something other than what the plaintiff asserted as the basis of her claim. It became necessary for the plaintiff to explain this. In order to do so she produced the entire record of the Naval Hospital and showed how the certificate of death was prepared. She also produced her husband's Navy medical and physical records. It was brought out by the plaintiff that neither the detailed autopsy report nor the medical and physical records were available to the hospital authorities when the death certificate was made out. Dr. Klein, the plaintiff's expert, testified that from the record available hypertensive heart disease could not have been found to be the cause of death. In fact, the defendants' expert, Dr. Rabson, stated that the cause of death was an edema of the pia, which was produced by the hardening of the arteries of the brain and could not state what agents served to start this mechanism (n.t. 442). There is no inconsistency in plaintiff's testimony, if believed, as to the cause of death. Defendants' position resolves itself to the tenuous argument that plaintiff cannot contradict the certificate of death which she herself offered in evidence. I have already pointed out that the fact contained in the certificate of death was first elicited by the defendants and that the plaintiff properly produced the facts to explain the certificates. But even if the certificate of death had been offered by the plaintiff without the prior elicitation by the defendants, it would seem that the plaintiff would have the right to contradict or explain it. In Cockroft v. Metropolitan Life Ins. Co., 125 Pa.Super. 293, 189 A. 687, the plaintiff attempted to offer the certificate of death restricting the offer to certain facts therein contained. The Superior Court held that this was improper and that if at all the entire statement must be offered, saying (125 Pa.Super. at page 300, 189 A. at page 690): "the whole statement must be taken together, although, 'if evidence at all, it is evidence only for what it is worth * * * and *concludes nobody.*' Borgon v. John Hancock M. Life Ins. Co., supra, 99 Pa.Super. 377, at page 384." (Emphasis supplied.) Apart from the language of the case cited I have been unable to find any case directly in point.

In accordance with the above, I therefore make the following orders:

The motion for judgment for defendant upon motion for directed verdict is denied.

The motion to set aside verdict and judgment entered thereon and for a new trial is denied.