Lubowicki, Appellant, v. Metropolitan Life Ins. Co.

Argued April 30, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER and JAMES, JJ.

*Benjamin Jacobson,* for appellant.

*D. C. Jennings,* for appellee.

OPINION BY CUNNINGHAM, J., October 3, 1934:

Plaintiff is the beneficiary named in an Industrial Life Insurance policy issued by the defendant company upon the life of Ignatz Stefanovich in the amount of $440. Attached thereto was an accidental death

benefit rider providing for the payment of an additional amount equal to the face of the policy: "Upon receipt of due proof that the insured ...... has sustained ...... bodily injuries solely through external, violent and accidental means, resulting directly and independently of all other causes, in the death of the insured, ...... No accidental death benefit will be paid ...... if death is caused or contributed to, directly or indirectly or wholly or partially, by disease, or by bodily or mental infirmity."

Upon the death of the insured, on April 18, 1931, defendant paid the face amount of the policy. Alleging that the insured died "from strangulation, due to aspiration of food into the lungs," plaintiff brought the present action to recover the additional amount specified in the rider and agreed to be paid under, and only under, the terms and conditions therein set forth.

Defendant denied that the insured had sustained bodily injuries, "solely through external, violent and accidental means," which had resulted, "directly and independently of all other causes," in his death.

When plaintiff closed her case, the trial judge granted a motion on behalf of defendant to direct a verdict in its favor; plaintiff's subsequent motion for a new trial was denied and she has appealed from the judgment entered upon the verdict.

Policies providing indemnity against injury, or death, caused "solely by external, violent and accidental means," have been construed frequently by appellate courts and the decisions need not here be reviewed. Reference, however, may be made to the opinion of KELLER, J., written for this court in Trau v. Preferred Accid. Ins. Co., 98 Pa. Superior Ct. 89, in which will be found a review, analysis and classification of the leading cases, including Eby v. Travel-

ers' Insurance Co., 258 Pa. 525, 102 A. 209, cited by appellant.

Under firmly established principles of law applicable to the issues framed by the pleadings, appellant had the burden of proving, by competent evidence, (a) that the insured's death was caused by external, violent and accidental means, and (b) that it resulted solely from such means, i. e. was not "caused, or contributed to, directly or indirectly or wholly or partially, by disease, or by bodily or mental infirmity."

The only question involved upon this appeal is whether the court below erred in holding that the evidence adduced in her behalf was insufficient to sustain this burden.

These material and undisputed facts appear from the testimony: For several months, insured had been a patient in the City Home and Hospital of the City of Pittsburgh, suffering from an inflammation of his heart and kidneys and the hardening of portions of his spinal column. His legs were paralyzed; he was confined to bed, but able to feed himself. On the day of his death an attendant brought him his lunch, consisting of a stew and bread and milk. Returning later, he noticed there was something wrong with the patient—"kind of restless and shaking himself around, moving his body slightly from side to side." The witness stated the patient had finished eating but had a piece of bread in his hand. Dr. Berger, upon whose testimony appellant chiefly relies, was summoned.

This witness, upon his examination in chief, definitely expressed the opinion that the insured's death was caused solely by strangulation, due to the presence of particles of food in his windpipe and bronchial tubes. Referring to the condition of the patient when he arrived, the doctor testified: "Q. What was his condition when you arrived at his bedside? A. Very bad. Q. And what was he suffering from? A. Well,

he could not catch his breath, he was blue and he was comatose. Q. Can you tell us, doctor, what this condition at this time was due to? A. As far as I could determine it was apparently due to particles of food in his bronchi; that is the tubes leading to the lungs. Q. Were you able to do anything for him at that time, doctor? A. I could not do anything.''

A portion of his cross-examination reads: ''Q. Was he coughing? A. No; not as far as I could see he was not coughing. Q. What examination did you make to discover whether there was anything lodged in the bronchi? A. I tried to look in there as far as I could. I put my finger back as far as I could. Q. Did you find anything there? A. I could not find anything by my examination; no. Q. You found no particles of food in the bronchi, as far as you could detect on your own examination? A. No. ...... Q. Is it your opinion that his death was contributed to in any way by his heart or his kidney condition? A. It is possible, but I can't be absolutely certain that such was the case.'' Later, upon redirect examination and after examining the records made at the time, the witness modified his testimony to the extent of saying that the insured was coughing when the witness answered the call of the attendant. In another portion of his cross-examination, the doctor, when asked whether he ever discovered any particles of food in the insured's lungs or bronchial tubes, answered, ''No, I could not dislodge any at all.''

Under the first proposition, above stated, it was not necessary that appellant show the happening of the alleged accident by the direct testimony of eye witnesses: Flaherty v. Scranton Gas Co., 30 Pa. Superior Ct. 446; Stewart v. Prudential Ins., Co., 92 Pa. Superior Ct. 256; Eby v. Travelers' Insurance Co., supra, and McCullough v. Railway Mail Assn., 225 Pa. 118, 73 A. 1007.

Circumstantial evidence of the character adduced in the cases just cited may be sufficient. There is no evidence that a post mortem examination was made, and the opinion of appellant's medical witness is of little probative value until it has been shown that it is supported by proof of some circumstance, such, for instance, as the presence of food (American Acc. Co., of Louisville v. Reigart, 94 Ky. 547, 23 S. W. 191), bristles from a toothbrush (Eby v. Travelers' Ins. Co., supra), or the like, in the patient's windpipe or tubes. In cases of the character of the one with which we are now dealing, we must be able to find upon the record convincing evidence, direct or circumstantial, of the happening of the alleged accident before we may concern ourselves seriously with the opinion of medical experts as to the cause of the insured's death. We are unable to find such evidence in this record.

But even if we could infer that particles of food accidentally lodged in the insured's windpipe, the testimony of the medical expert, through whom appellant spoke, to the effect that he could not be certain whether death was contributed to by the diseases from which the patient was suffering, left that vital question in such doubt that we deem it insufficient to sustain a finding that the patient's bodily infirmities did not contribute to his death. The language of the policy was carefully chosen; it expressly provides that the benefit here involved will not be paid if death was even indirectly or partially contributed to by any disease.

The court below did not err, in our opinion, in holding that appellant had not submitted sufficient evidence to take her case to the jury.

Judgment affirmed.