## Arabian American Oil Company *v.* Kirby & Kirby, Inc., Appellant.

24

Argued March 21, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*J. Webster Jones,* for appellant.

*Harrison G. Kildaire,* with him *Joseph W. Henderson* and *Rawle & Henderson,* for appellee.

OPINION BY HIRT, J., July 17, 1952:

Plaintiff, Arabian American Oil Company, shipped 12 boxes of earthenware sinks from Trenton Potteries Company, in Trenton, New Jersey, to the warehouse of defendant E. A. Gallagher in Philadelphia over the motor freight lines of appellant, Kirby & Kirby, Inc., a common carrier. Earthenware is fragile and because these sinks ultimately were to be exported, the manu-

facturer at Trenton packed them in wooden cases instead of crates commonly used for domestic shipments. On arrival at the warehouse in Philadelphia an inspection disclosed that a number of the sinks were broken. Plaintiff thereupon brought this action in trespass for damages against both the warehouseman and the carrier. The case was tried by Judge PIEKARSKI without a jury. On sufficient evidence it was found that the carrier received the sinks in good condition and that they were not damaged in the possession of defendant Gallagher. The court accordingly concluded that the Kirby company was solely liable for the loss and entered judgment against that defendant alone, in the amount of the agreed value of the sinks. This is the appeal of Kirby & Kirby, Inc., from the refusal of the lower court to enter judgment in its favor n.o.v. It is contended that the goods were so packed as to mislead appellant as to risks of carriage assumed. An insurance company advanced the value of the damaged sinks to the plaintiff, its insured, on a "borrowed and loan" agreement. Appellant further contends that regardless of whether the shipment was properly packed, it is entitled to the benefit of this insurance under the "Benefit of Insurance" clause of the bill of lading, and therefore is not liable to plaintiff in any amount. We find no merit in either contention; the judgment will be affirmed.

The only markings on the shipment were the words "This Side Up" on the top of each box. But the failure of the shipper to mark the packages as "fragile" does not relieve the carrier from liability under the circumstances. The principle of *Bell Tel. Co. v. Am. Rwy. Exp. Co.*, 92 Pa. Superior Ct. 180, on which appellant strongly relies, is not controlling here. In that case the shipment was a box of radio tubes of "delicate and fragile construction", which were destroyed in transit. Judgment was entered against the shipper

"because of the failure of the plaintiff [as shipper] to mark on the package the fact that the contents were fragile, thus putting the defendant [carrier] on notice in order that care might be exercised in proportion to the greater risk involved in the shipment". The rule applied was the "established principle of law . . . that no responsibility rests on the [carrier] for the loss of property arising from a wrongful act of the shipper . . ." But though charging the shipper with deceptive conduct, that case did not hold that failure to mark the package "fragile", in itself, was a fraud on the carrier. The carrier's bill of lading provided that packages containing fragile goods be "so marked and packed as to insure safe transportation . . . with ordinary care". The shipper in that case was charged with fraud, barring recovery, from the fact that the requirement of the bill of lading for such marking was reasonable and had not been met, with the result that the carrier was justified in exercising less care than the actual character of the goods required. In the instant case the carrier's contract with plaintiff did not demand such marking and the nature of the shipment did not require it. The bill of lading referring to the shipment as "earthenware" gave ample notice that the plumbing fixtures, accepted for carriage, were breakable. There was no attempt at concealment of the nature of the articles and the plaintiff here is not chargeable with imposition on the carrier in any respect.

The earthenware sinks were properly packed for shipment from Trenton to Philadelphia. It is therefore unimportant that they were consigned to defendant Gallagher for the purpose of testing the sufficiency of the packing to withstand rough handling by foreign stevedores and others in exporting them to Arabia, the ultimate destination of the shipment. In general a common carrier is regarded as an insurer against

all losses. *Steamship Co. v. Smart,* 107 Pa. 492, 500. To avoid liability, since the contract here was one of common carriage, the burden was on the appellant to show that the loss was within an exception to the general rule. *Villari et al. v. James,* 155 Pa. Superior Ct. 155, 158, 38 A. 2d 379. Appellant's evidence failed to sustain the affirmative defense of fraud and concealment of the inherent fragile nature of the goods. The trial court upon sufficient evidence found that the sinks were properly packed and that the carrier had notice of the nature of the shipment. These findings, adverse to the appellant have the force and effect of a verdict of a jury and cannot be disturbed on appeal. *Villari et al. v. James,* supra. On the trial of the case this appellant's evidence did not account for the loss under circumstances absolving it from negligence. Appellant therefore has no just ground for complaint.

From the fact that the bill of lading provides that the carrier shall have the benefit of any insurance effected by the shipper, appellant's second argument is that reimbursement of plaintiff for the loss by its insurer, absolves appellant carrier from liability. We well might decide the question against appellant because of its failure to plead payment in its answer to plaintiff's complaint. Payment is an affirmative defense which under the Rules of Civil Procedure and specifically Pa. R. C. P. 1030, must be pleaded responsively under the heading of new matter. Otherwise the defense will be regarded as waived. Cf. Comment on Rules 1030 and 1045, 2 Anderson Pa. Civ. Pract. pp. 452, 455, 461, 462, 677 and 678; *Janco v. John Hancock Mut. Life Ins. Co.,* 160 Pa. Superior Ct. 230, 50 A. 2d 695.

But even on the merits appellant has no ground for complaint. The insurer in this instance paid the plaintiff the amount of its damage as a loan repay-

able to the extent of its subsequent recovery from the carrier. Agreements of this nature based upon a loan receipt have been a common practice for many years. Historically the reason for such agreement, based on a loan receipt, was to enable the shipper to preserve its right of action against a carrier, notwithstanding a provision of the bill of lading that the carrier should have the benefit of any insurance effected by the shipper. The device was necessary for the protection of the insurer since if the shipper were paid outright the insurer's subrogation rights would be extinguished. Ever since the exhaustive opinion in *Luckenbach v. McCahan Sugar Co.*, 248 U. S. 139, 39 S. Ct. 53, the legality of such agreements cannot be questioned and they must be given effect regardless of the stipulation of any bill of lading that the carrier shall have the benefit of insurance effected by the shipper. In that case Mr. Justice BRANDEIS in commenting upon the effectiveness of the loan agreement said, at page 149: "It is creditable to the ingenuity of business men that an arrangement should have been devised which is consonant both with the needs of commerce and the demands of justice". Cf. *The Plow City*, 122 Fed. 2d 816, 819. The case of *Roos v. Railroad Co.*, 199 Pa. 378, 49 A. 344, on which appellant relies was decided many years before the decision in the *Luckenbach* case. Moreover, in the *Roos* case the jury found that the payment was an adjustment of the loss and not a bona fide loan, repayable to the insurer out of the amount recovered from the carrier.

Judgment affirmed.